UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALLICIA HESTER** | **CIVIL ACTION** |
| **VERSUS** | **NO:   16-16685** |
| **TARGET CORPORATION OF MINNESOTA** | **SECTION: "H" (4)** |

## ORDER;

Before the Court is Plaintiff Allicia Hester's **Motion to Amend Complaint (R. Doc. 21)** seeking leave of the Court to amend her complaint to add non-diverse defendant Stirling Properties, LLC ("Stirling") and to state a specific amount of damages in the amount of $2,000,000.00.  The motion is opposed. R. Doc. 22. The motion was submitted on March 29, 2017 and heard without oral arguments. For the following reasons, the motion is **GRANTED.**

### I.     Background

This diversity action was removed from the Twenty-Second Judicial District Court for the Parish of St. Tammany on November 30, 2016. R. Doc. 1. Allicia Hester ("Plaintiff") alleges that on or about December 1, 2015 she fell as she entered a Target store located in Slidell, Louisiana. R. Doc. 1-6, p. 3. The Plaintiff alleges that her fall was occasioned by the unreasonably dangerous entrance, which was made unreasonably dangerous as a result of its slope and painted surface. *Id.* The Plaintiff's fall allegedly led to the above-the-knee amputation of her left leg. *Id.* at p. 4. As such, the Plaintiff filed the instant claims of negligence against the Target Corporation of Minnesota ("Target"), who allegedly owned, operated, and maintained the accident site including the parking lot and entrance way. *Id.* at p. 3-4.

At this time, the Plaintiff seeks to amend her complaint to name as defendant the non-diverse party Stirling. R. Doc. 21. Based on information received through discovery and conversations with Target's counsel, the Plaintiff is unable to exclude Stirling—the operator of the

1

mall where the Target store is located—as possibly having some responsibility for the incident in question. R. Doc. 21-6, p. 1. The Plaintiff originally filed a separate state law claim against Stirling on November 30, 2016. R. Doc. 21-2, p. 1.[1] The Plaintiff also seeks to specify that Target and Stirling are liable to her for $2,000,000.00

Target has opposed the motion only to the extent that the Plaintiff seeks to add a specific allegation of a monetary amount due. R. Doc. 22. Target argues that if the case is ultimately remanded back to Louisiana the specification allegation of $2,000,000.00 would be in direct conflict with Louisiana Code of Civil Procedure Article 893.

## II.     Standard of Review

Generally, Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir.2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ...and futility of the amendment.'" *Marucci Sports,*

---

[1] The Court notes that the state court case against Stirling was fax filed on November 30, 2016; as such, there does not appear to be a prescription issue with respect to the Plaintiff's claims against Stirling.

*LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994). An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir 2003)).

Nonetheless, the Court "should scrutinize an amended pleading naming a new nondiverse defendant in a removed case 'more closely than an ordinary amendment.'" *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987)). This increased scrutiny is rooted in 28 U.S.C. 1447(e), which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy the subject matter jurisdiction, the Court may deny joinder or permit joinder and remand the action to the State Court." The Fifth Circuit has developed a four-part analysis for determining if the amendment should be allowed: "[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities." *Hensgens*, 833 F.2d at 1182; *see also, Priester v. JPMorgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013) (noting that *Hensgens* factors are used "in determining whether to permit joinder of non-diverse parties").

### III.  Analysis

Here, the Plaintiff seeks to add Stirling, who is a nondiverse party. R. Doc. 21. To this extent, Target does not oppose the motion. R. Doc. 22. Nonetheless, given that the addition of the non-diverse party would destroy jurisdiction in this case, the Court will still apply the *Hensgens* factors to determine if removal is appropriate.

#### A.  First *Hensgens* Factor

The first *Hensgens* factor, the extent to which the purpose of the amendment is to defeat federal jurisdiction, weighs in favor of denying the motion to amend. "When analyzing the first *Hensgens* factor, district courts have considered whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Schindler v. Charles Schwab & Co., Inc.*, No. 05-0082, 2005 WL 1155862, at *4 (E.D. La. May 12, 2005) (Africk, J.); *In re Norplant Contraceptive Prods. Liab. Litig.*, 898 F. Supp. 429, 431 (E.D. Tex. 1995) ("[I]n the cases in which it was apparent that the Plaintiff knew about the nondiverse defendant's activities at the time the suit was originally brought in state court but still chose not to include that party as a defendant, the courts have viewed the later attempt to add the nondiverse defendant as nothing more than an attempt to destroy diversity."). "However, courts have also recognized that when a plaintiff states a valid claim against a defendant, it is unlikely that the primary purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction." *Schindler*, 2005 WL 1155862, at *3.

Here, it is without question that the Plaintiff knew or should have known about Stirling at the time the original state court petition was filed. In a letter dated December 10, 2015 from one of Target's Claims-Associates, the Plaintiff was informed that Stirling was the company responsible for maintaining the sidewalk/curb area at the Target store location in question. R. Doc. 24-5. As such, the Plaintiff was on notice of Stirling's potential involvement a full ten months prior to the filing of the suit against Target in the state court on October 13, 2016. R. Doc. 24; R. Doc. 1-6.

The Plaintiff argues that it did not initially take action against Stirling because "it was informally understood that Target assumed responsibility for the maintenance of the area of the

incident in suit (separate and apart from acknowledging any *liability*)." R. Doc. 24, p. 3 (emphasis in original). The Plaintiff also urges that she is not trying to defeat jurisdiction. *Id.* at p. 4.

However, the Court does find it somewhat suspicious that the Plaintiff only took action to file her claim in state court against Stirling immediately after Target removed the instant action when she was aware of Stirling for some time. Certainly, if the Plaintiff wanted to merely preserve her claim, it is unclear why she waited until the almost the last possible moment before her claim prescribed to file it. Indeed, the Plaintiff's decision to add Stirling now appears to the Court as an attempt by the Plaintiff to either force or entice Target to formally acknowledge that it assumed responsibility for the accident site. *Id.* at p. 4 ("If Target simply formally acquiesces in what it has informally acknowledged then Ms. Hester will withdraw her motion. Moreover, Target did not oppose *either* of Ms. Hester's motions for extension being fully cognizant of the Stirling issue.").

Nonetheless, regardless of the Court's concern about the Plaintiffs' motive, "[w]ith regard to the first *Hensgens* factor, the case law indicates that as long as the plaintiff states a valid claim against the new defendants, the principal purpose of the amendment is not to destroy diversity jurisdiction." *Herzog v. Johns Manville Prod. Corp.*, No. 02-1110, 2002 WL 31556352, at *2 (Nov. 15, 2002) (Fallon, J.); *Bienaime v. Kitzman*, No. 00-473, 2000 WL 381932, at *2 (E.D. La. Apr. 12, 2000) (Africk, M.J.) (same). To this extent, the Plaintiff appears to have stated a valid claim of negligence against Stirling as the potential owner, operator, and maintainer of the accident site. R. Doc. 21-6.

Therefore, the Court finds that the first factor weighs slightly against granting the amendment because of the suspicious circumstances surrounding the amendment, namely the filing of the claim against Stirling and seeking to add Stirling as a Defendant now. *See Schindler*, 2005 WL 1155862, at *4 (finding first factor weighed slightly against granting amendment where

5

Court opined plaintiff's motivation was likely to defeat jurisdiction although plaintiff stated a valid claim). "However, the fact that one factor might weigh in favor of denying the amendment is not dispositive of this Court's inquiry. . ." *Id.*

### B. The Second *Hensgens* Factor

The second *Hensgens* factor, whether the Plaintiff has been dilatory in asking for amendment, weighs against the granting the amendment. The request to amend comes three and a half months after the case was removed from state court. And, there is nothing to indicate that anything concerning Stirling's involvement in the case has changed other than Target's continued refusal to admit that it was responsible for the accident site. While the Plaintiff may have been awaiting discovery responses, the Plaintiff waited until January 26, 2017—nearly two months from the date of removal—to serve her Requests for Production of documents that she complains Target has not responded to. R. Doc. 24, p. 2-3. Moreover, the Plaintiff *did* receive discovery responses to her interrogatories on February 10, 2017, but she still did not file the instant motion for another month. Finally, the Court notes that the District Court has already set trial dates for this matter. *See Herzog*, 2002 WL 31556352, at *2 ("[T]he same cases, when applying the second *Hensgens* factor, found that when no trial or pre-trial dates were scheduled and no significant activity beyond the pleading stage has occurred, the Plaintiff was not dilatory in seeking to amend the complaint."). As such, the second factor weighs against allowing the amendment.

### C. The Third *Hensgens* Factor

The third *Hensgens* factor, whether plaintiff will be significantly injured if amendment is not allowed, weighs against granting the amendment. While the rule states "significant injury," the general approach in this District has been focused mostly on the inefficiency, waste of judicial resources, danger of inconsistent results, and cost to the Plaintiff that results from forcing the

6

Plaintiffs to bring a separate suit on the valid claim. *See id.* ("[T]he third *Hensgens* factor favors the Plaintiff because forcing the Plaintiff to file a separate suit on the same facts is inefficient and a waste of judicial resources.").[2] Given this emphasis, the Court feels that it must recognize these concerns. Indeed, the Plaintiff may well be carrying out two suits related to this matter. However, the Plaintiff's own actions belie any of these concerns. The Plaintiff chose to file a separate state court suit against Stirling for the accident at issue. Had the Plaintiff been concerned about the costs of separate litigations, the undersigned is not sure why the Plaintiff did not file a motion to amend immediately in this Court to add Stirling as a defendant in the instant matter.

Moreover, Courts have recognized that "[a]nother consideration bearing on [the significant injury] factor is whether a plaintiff can be afforded complete relief without the amendment." *Schindler,* 2005 WL 1155862, at *4 (citing *Jerido v. Am. Gen. Life and Acc. Ins. Co.*, 127 F.Supp.2d 1322, 1325 (M.D.Ala.2001)); *see also Anzures v. Prologis Texas I LLC,* 886 F. Supp. 555, 565 (W.D. Tex. 2012) (same). Certainly, the Plaintiff here can be afforded complete relief if

---

[2] *See also Schindler,* 2005 WL 1155862, at *4 (citation omitted) ("A plaintiff may be prejudiced considering the financial burden imposed by forcing such a plaintiff to maintain two parallel lawsuits arising out of the same facts in two different courts. District courts have also noted that forcing a plaintiff to maintain two lawsuits in two different courts which arise out the same facts wastes judicial resources and may lead to inconsistent results."); *Jade Marine, Inc. v. Detroit Diesel Corp.*, No. 02-2907, 2002 WL 31886726, at *2 (E.D. La. 2002) (Vance, J.) ("Third, and finally, the Court notes that denial of amendment would prejudice plaintiff by requiring plaintiff to fight a two-front war, litigating against Detroit Diesel and S & S in federal court while litigating against Marquette, on related claims, in state court."); *Bienaime*, 2000 WL 381932, at *5 ("[I]f the amendment is not allowed, [Plaintiff] will be forced to file a separate lawsuit against [Defendant] in state court. To put [Plaintiff] in such a position, would be a waste of judicial resources."); *Burton v. Mentor Corp.*, No. 96-2078, 1996 WL 751063, at *2 (E.D. La. Oct. 29, 1996) (Wilkinson, M.J.) ("Substantively, plaintiff would suffer no real harm if the amendment were denied since it appears that his claims against Touro could still be asserted in state court. Procedurally, however, considerations of cost and efficiency militate in favor of not requiring plaintiff to prosecute two separate claims in two forums when both arise generally from the same set of facts and circumstances.").

she succeeds on her claim against Target. Moreover, the risk of inconsistent results is minimal here. The Court finds that there would be no "significant injury" in denying the amendment.

### A. The Fourth *Hensgens* Factor

The fourth *Hensgens* factor, any other factors bearing on the equities, weighs in favor of denying the amendment. As this Court has previously explained,

> When determining "other factors," the Court typically balances the competing interests of the parties. Courts have noted that the defendant has a compelling interest in maintaining the federal forum. The rationale behind removal statutes is that diverse defendants have an option of selecting a state or federal forum. However, there is also the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources.

*Neely v. Scottsdale Ins. Co.*, No. 14-0048, 2014 WL 1572441 at *8 (E.D. La. Apr. 17, 2014) (Roby, M.J.) (internal quotations and citations omitted). Here, the Court sees no "other factors" that weigh in favor of granting the amendment. Certainly, the Defendant has a compelling interest in maintaining the forum it selected when it removed the case from state court. Moreover, the Plaintiff appears to have no issue in maintaining the federal forum itself. *See* R. Doc. 24, p. 4. As such, the fourth factor also weighs against granting the motion to amend.

Given the foregoing, the Court denies the motion to amend to the extent that it seeks to add the non-diverse party. However, given that Target's concerns about the addition of the specific allegation of monetary damages is moot given that diversity still exists, the Court grants the motion to amend to add the specific allegation of money damages.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion to Amend Complaint (R. Doc. 21)** is **GRANTED IN PART and DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's motion is **GRANTED** to the extent that it seeks to add a specific allegation of a monetary amount due for her claim.

**IT IS FURTHER ORDERED** that Plaintiff's motion is **DENIED** to the extent that it seeks to add non-diverse defendant Stirling Properties, LLC.

**IT IS FURTHER ORDERED** that the Plaintiff file an Amended Complaint in accordance with this order **no later than April 6, 2017.**

New Orleans, Louisiana, this 30th day of March 2017.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**